Opinion.

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## DAVY POCAHONTAS COAL COMPANY v. KAYLOR.

### January 13, 1916.

#### Absent, Cardwell, J.

1. CONTRACTS—*Principal and Agent—Commissions—Case at Bar.*—Under a proper construction of the contract in suit, the agent had the right to sell within certain specified territory, fifty *per cent.* of the total output of commercial coal mined by his principal, and if he made the sale, or if the principal sold any part of said fifty *per cent.* in said territory, the agent was entitled to a stipulated commission, but, the contract being silent as to any sales in excess of said fifty *per cent.* within said territory, the agent is not entitled to commission on sales made by the principal in excess of fifty *per cent.* within said territory. He was allowed, under conditions, to sell in excess of the fifty *per cent.* and if he made such sales he was entitled to the commission thereon, but not upon such sales made by the principal within said territory.

2. APPEAL AND ERROR—*Verdicts—Evidence to Support.*—Where a question of fact has been fairly submitted to a jury, their verdict will not be disturbed where there is evidence sufficient to support the verdict.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of *assumpsit.* Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Loyall, Taylor & White,* for the plaintiff in error.

*Mann & Tyler,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Kaylor brought this suit in October, 1913, claiming damages to the amount of $2,000, made up of $450 commissions on

9,500 tons of coal sold to the West Virginia Pocahontas Sales Corporation, but not delivered by defendant, and the balance made up of commissions on coal which had been sold direct by the Davy Pocahontas Coal Company to certain parties in the territory for which Kaylor had been appointed exclusive agent. Kaylor was, by agreement entered into on the 14th day of October, 1911, between himself and the Davy Pocahontas Coal Company, appointed the exclusive agent of the company for the sale of its coal in that territory "that can be reached by shipments moving east and south over the Norfolk and Western Railway from the mines of the party of the first part. It is also understood that this will cover all shipments going through Hampton Roads for coastwise either north or south, also export and bunker coals." The questions here to be decided arise under sections 5 and 6 of that contract, which are as follows:

"5. Tonnage to be furnished and delivered to the party of the second part is to be based upon 50 *per cent.* of the total output of commercial coal mined by said first party, but in the event that the party of the second part is unable to sell and dispose of 50 *per cent.* of the total output, and the said party of the first part can market that portion of said 50 *per cent.* which the party of the second part cannot dispose of, it shall have the right to do so in other territory free from any claim or commission of said party of the second part, and if the said second party can sell and dispose of a greater *percentage* of said output than the said 50 *per cent.* thereof, and the first party is in a position to furnish the said increase, then the said first party agrees to do so, for which said second party shall receive the same commission as he is entitled to under this contract, for the sale of coal of first part.

"6. Commissions and Payments. It is agreed that the party of the first part is to pay the party of the second part ten *per cent.* (10 *per cent.*) per ton on the prices received f. o. b. mines for all shipments to the territory before mentioned, except the

railroad fuel which is to be five cents (5c.) per ton. Said commission to be paid to the party of the second part on the 20th of each month for all shipments made the previous month."

There was a verdict for the plaintiff and both parties asked that it be set aside and a new trial awarded, but the court overruled the motion and entered judgment. In this court the Davy Pocahontas Coal Company, the defendant in the court below, is the plaintiff in error, and Kaylor, the defendant in error, assigns cross error under rule eight of this court.

Kaylor contended in the lower court and still contends under his cross assignment of error that, under a proper construction of the contract of October 14, 1911, he is entitled to recover ten *per cent.* per ton on the price received by the defendant f. o. b. mines on all shipments of commercial coal made by the defendant into his territory, and five cents per ton on all railroad fuel shipped into his territory while the contract was in force, while the plaintiff in error claims that Kaylor was not entitled to commissions on 9,500 tons sold to the West Virginia Pocahontas Sales Corporation, but not delivered, amounting to $475.00, or on coal sold by the defendant in Kaylor's territory, but not by or through Kaylor as agent, amounting to $1,973.16.

The circuit court construed the contract as contended for by neither Kaylor nor the Davy Pocahontas Coal Company, but held that Kaylor was entitled to recover commissions on coal so admitted to have been shipped into his territory up to 50 *per cent.* of the total output, and also that settlements should be made for these shipments on the 20th of the month following that in which shipment was made, as provided for in the sixth clause, and the jury rendered a verdict in accordance with the court's construction of the contract.

By clause 5 it is provided that the tonnage to be furnished and delivered to the party of the second part (that is, Kaylor),

is to be based upon 50 *per cent.* of the total output of commercial coal mined by said first party, but in the event that the party of the second part is unable to sell and dispose of 50 *per cent.* of the total output, and the said party of the first part can market that portion of said 50 *per cent.* which the party of the second part cannot dispose of, it shall have the right to do so in other territory free from any claim of commission of said party of the second part, and if the said second party can sell and dispose of a greater *percentage* of said output than the said 50 *per cent.* thereof, and the first part is in a position to furnish the said increase, then the said first party agrees to do so, for which said second party shall receive the same commission as he is entitled to under this contract for the sale of coal of first party." This clause does not seem to provide for the sale of coal made by the Davy Pocahontas Coal Company in the territory of its sales agent, Kaylor, above 50 *per cent.* of the total output of commercial coal mined by the company. In other words, in accordance with the terms of the contract, if Kaylor disposed of 50 *per cent.* of the total output of the mines in his territory, and received commissions therefor, his right under the contract was satisfied, except in the case of his being able to sell and dispose of more than 50 *per cent.* of the total output, when he would be entitled to a commission upon the excess, provided the party of the first part was in a position to furnish the increase, and in the event that the party of the second part was unable to sell and dispose of 50 *per cent.* of the total output, then the party of the first part was to be permitted under the contract to market that portion of the 50 *per cent.* which the party of the second part could not dispose of; and if these sales were made by the company within the territory of the party of the second part, the commissions provided for by the contract were to be paid, but if they were made in territory other than that in which Kaylor was appointed sales agent, such sales were to be

free from any claim of commission of the party of the second part. This was the view of the circuit court, as we understand it, and is a proper construction of the contract.

The claim of the plaintiff of the item of five cents per ton commission on 9,500 tons of coal sold by Kaylor to the Pocahontas Sales Corporation rests upon the construction of a subsequent contract entered into between the parties, as shown by letter of J. T. Jones, assistant secretary-treasurer, to Kaylor. Jones appears to have conducted all the negotiations between the parties. In that letter Jones says:

"Baltimore, Md., June 4, 1912.

"Mr. C. M. Kaylor,

"Norfolk, Va.

"Dear Sir:

"Confirming conversation over the phone this morning, we authorized you to close with the West Virginia Pocahontas Coal Sales Company for an approximate tonnage of 1,500 tons monthly up to April 1, 1913, at $1.00 per gross ton f. o. b. mines to us, being understood in the event we are successful in obtaining this business, you are to receive 5c. per ton commission."

There is no doubt that Kaylor secured the business referred to in this letter, but for some reason the company did not furnish the coal, and no sufficient reason for its not having done so appears in this record. The question was fairly submitted to the jury and they found in favor of defendant in error, and the evidence is, we think, sufficient to support the verdict on that point.

Upon the whole case, we are of opinion that there is no error in the judgment of the circuit court in the case of *Davy Pocahontas Coal Company* v. *Kaylor,* and it is therefore affirmed.

*Affirmed.*