SMITH, APPELLANT, *v.* DURACRAFT PRODUCTS CO., APPELLEE.

*Messrs. Dolle, O'Donnell & Cash,* for appellant.
*Messrs. Stewart & Beirne,* for appellee.

MATTHEWS, J. The plaintiff sued to recover damages for breach of a contract to pay him five per cent on all business secured by him in Louisville and Jefferson county, Kentucky, in consideration of his services as its sales representative in that territory. He alleged that he rendered the services and secured $135,652.03 worth of business in that territory, and prayed for judgment for five per cent thereof with interest.

The defendant admitted entering into the contract and that the plaintiff had secured orders in the sum of $132,363.86 from Curtiss-Wright Corporation for the manufacture of certain articles; that it manufactured and delivered to Curtiss-Wright Corporation a part thereof totaling $1,044.65, a part of which was returned by Curtiss-Wright Corporation, and that thereupon Curtiss-Wright Corporation cancelled the residue of such orders, as it was authorized to do by the terms thereof. The defendant offered to confess judgment for five per cent of the contract price of the articles delivered, not exceeding $55.57.

A jury was waived. At the trial the plaintiff introduced the writing which the parties had signed as the evidence of their contract. This writing is as follows:

"April 19, 1943.

"Duracraft Products Co.,
    2339 Gilbert Avenue
    Cincinnati, Ohio.

"Gentlemen:

"This letter is confirmation of recent verbal agreement between W. J. Smith, 209 Martin Brown

Building, Louisville, Kentucky, and Duracraft Products Co. of Cincinnati, Ohio, to the effect that the latter named firm will pay to W. J. Smith for his personal services as your engineer and local representative a sum of five percent (5%) on all business secured either directly or indirectly from the territory of Louisville and Jefferson county, Kentucky, for the Duracraft Products Co. during a period of ninety (90) days beginning from this date; and the continuation of said contract thereafter will be subject to mutual agreement of both parties, and to be determined at the expiration date of the above stated ninety (90) days.

"Furthermore, it is agreed that W. J. Smith is to assume all of his own operating expenses and that the Duracraft Products Co. is not obligated to compensate or to remunerate to W. J. Smith for the latter's services, other than the above stipulated five percent (5%) on business actually obtained.

                                  "Signed
                                          "W. J. SMITH
                                  "Sig. Witnessed by
                                          "Vera Reynolds
"Above agreement approved by
"Duracraft Products.
· Division Cincinnati Venetian Blind Co.
"By J. W. Watthall,
"Sig. Witnessed by
"Thomas Hendy."

Evidence was introduced showing that the plaintiff was in a position to solicit orders or sub-contracts with concerns engaged in manufacturing war supplies for the United States Government, and particularly was in a position to solicit from Curtiss-Wright Corporation, which was engaged in manufacturing aeroplanes under contract with the government. In fact, he had an arrangement with Curtiss-Wright Corporation and

had been furnished with blue-prints and specifications by it before he started negotiations with the defendant.

The evidence shows that under a regulation of the War Department, authorized by act of Congress, the United States Government reserved the right to terminate its contracts for war material at its discretion, upon which termination it would pay for the executed portion upon a certain basis but make no payment of damages for the part unperformed.

Curtiss-Wright Corporation was producing aeroplanes for the government and the orders which the plaintiff obtained were for parts which it needed to enable it to fulfill its contract. Because of the power reserved by the government to terminate the contract for aeroplanes, Curtiss-Wright Corporation incorporated in all these orders obtained by the plaintiff a provision, in effect, making them subject to this right to terminate and authorizing Curtiss-Wright Corporation to terminate them upon giving written notice upon which it would be liable only to the extent that it was reimbursed by its customer for actual pending obligations and inventory purchased for fabrication into goods called for in the orders, and upon such payment the materials were to be delivered to Curtiss-Wright Corporation.

After holding the letter for about two weeks, the defendant signed its name to the acceptance and returned the letter with the acceptance to the plaintiff.

Those were the circumstances under which the plaintiff and defendant contracted.

The evidence also shows that Curtiss-Wright Corporation did cancel the orders after a small quantity had been delivered and that this cancellation resulted from the fact that the government had terminated its contract with Curtiss-Wright Corporation for the special type of aeroplane for which the parts included in these orders were intended.

There was evidence introduced by the defendant, over the objection of the plaintiff, of a conversation between the plaintiff and two of the defendant's officers before they signed the contract and while they had its signing under consideration. In this conversation, the plaintiff was told that they were hesitating about signing because they were uncertain about when plaintiff was to be paid under the terms of the writing and that they did not want the contract to bind defendant to pay before the defendant was paid by its customer, or, at least, until merchandise was delivered to its customer. Upon being told this, the plaintiff, according to this testimony, assured them that it was his understanding that he was not to be paid until defendant was paid, and thereupon they signed on behalf of the defendant.

The trial court found that the right of the plaintiff to receive a commission on the Curtiss-Wright Corporation orders was contingent upon it not terminating the contract following the termination of its contract with the government, by the government. The court rendered judgment for the plaintiff for five per cent of the contract price of the materials delivered to Curtiss-Wright Corporation on the orders.

The plaintiff appealed from that judgment, assigning several errors. The decision, however, depends entirely upon the correct interpretation of the contract.

It is claimed that the court erred in the admission of the conversation between the plaintiff and the defendant's officers as to when and under what circumstances the plaintiff would receive his commission. The contention is that this violated the parol evidence rule in that its purpose was to vary or add to the agreement, as evidenced by the writing.

It will be observed that the writing makes no reference to the time of payment of any commissions earned. Without doubt in that situation the law would

imply that payment should be made at the time the commissions were earned. And the commissions—according to the writing—were to be computed "on all business secured," or as stated at the close of the letter, "on business actually obtained."

The question presented is whether under all the circumstances resort can be had to the prior oral communications between the parties for the purpose of arriving at the meaning of the words used by the parties in the writing, and not solely, or at all, for the purpose of fixing the time of payment or of imposing a condition of payment, when the writing contains no provision on the subject.

The authorities disclose some confusion as to whether evidence of prior oral declarations of intent are admissible on the terms of a written contract not expressed in the writing, but imported into it by implication of law only—such as the time of payment when the writing is silent on that subject. It is broadly stated in 17 Ohio Jurisprudence, 530, that implied contracts, and terms implied by law, are subject to the parol evidence rule. However, the Ohio cases cited for the statement furnish a shaky foundation for the statement. In 3 Williston on Contracts (Revised Ed.) at 1839 (Section 640) the author says that it is the general rule, although he criticizes it.

In this posture of the authorities, we would hesitate to hold that these prior oral statements were competent if the writing were definite in all other respects. But this writing is indefinite in perhaps the most important term of the contract, that is, as to the time when the duty to pay attaches and not merely to the time when that duty should be discharged. At no place in the writing is it stated that the plaintiff would earn his commission by obtaining orders accepted by defendant. The basis of his right to commissions was "business secured * * * business actually obtained."

Reference to any English dictionary will disclose that the word "business" has a very broad meaning. It means anything that engages time, attention, or labor. It may be used in many different connotations. It seems plain that the declarations of the parties as to the particular sense in which they used the terms in a writing is competent to explain, not to vary, the writing. 12 American Jurisprudence, 757.

Furthermore, the plaintiff's commission was to be computed on the amount of the business obtained. It would seem that that language would limit the base for calculation to the opportunity which the plaintiff had secured for the defendant to pursue its business and, where, without its fault and in accordance with the terms of the orders obtained by plaintiff, it was less than the parties had hoped, there would be no right to commissions for the unfulfilled hope. That seems to be the case.

Suppose the order had been for the "requirements" of Curtiss-Wright Corporation and defendant had accepted it. Could it be said that the plaintiff had earned his commission upon the acceptance of such an order? If so, upon what basis would it be calculated? Or suppose it had been for "requirements" not exceeding a specified amount. Upon acceptance of such an order would the agent be entitled to a commission on the maximum? We cannot think so.

We are of the opinion that the oral statements were competent and that the trial court placed the correct construction upon this contract.

The cases relied on by plaintiff do not justify a contrary conclusion.

In *Lockwood* v. *Levick*, 8 C. B. N. S. (Eng.), 603, 141 Eng. Rep. (F. R.), 1303, the agency contract expressly provided that the agent should have no duty beyond securing the orders. He secured absolute orders. The principal accepted the orders, but was unable to fill

them because of lack of machinery. The purchaser was able and willing to take the goods. It was only because of the principal's breach of contract that the goods were not delivered.

It is not suggested that either the defendant or Curtiss-Wright Corporation violated any term of the contract between them negotiated by the plaintiff.

In *Davy Pocahontas Coal Co.* v. *Kaylor*, 118 Va., 296, 87 S. E., 549, the agency contract contained in a letter authorized Kaylor to "close with" the buyer on certain terms, for which he was to receive a commission of five cents per ton for "obtaining this business." The court said: "There is no doubt that Kaylor secured the business referred to in this letter, but for some reason the company did not furnish the coal, and no sufficient reason for its not having done so appears in this record."

In the case at bar no unconditional order was obtained, and the fact that the buyer exercised its right to cancel furnished an entirely valid reason, in fact a perfect reason, for discontinuance. The business relation ceased according to the terms of the contract, and without fault on the part of either buyer or seller.

In *Vellore S. S. Co., Limited,* v. *Steengrafe,* 229 F., 394, recovery was sought of a commission for obtaining a charter of a British steamship for four and one-fourth years. The case was disposed of on demurrer to an answer in which the defendant alleged that the charter was nullified because of war between Great Britain and Germany. The provision which the court construed provided that "A commission of * * * payable * * * upon the signing" of the charter. Clearly, the commission was earned upon the signing of the charter. To decide the case before the court upon the authority of that case would be begging the question here presented.

In *Meilink Steel Safe Co.* v. *Vaughn*, 141 F. (2d), 389, the court reviewed and affirmed a judgment for the agent. The facts showed that he was much more than a mere selling agent. He could be directed and assigned any duty within the discretion of the principal. The contract provided that his compensation should be measured by the amount of "business developed" in the territory to which he was assigned. The trial court found in favor of the agent that his commission should be based on orders obtained without regard to whether they had been filled. The Circuit Court of Appeals found that was a reasonable interpretation of the contract and the fact that government regulations prevented filling the orders did not prevent a recovery. However, there was no suggestion that the orders obtained contained any provision limiting the obligation of the buyer. It was reasonable to conclude that the parties considered absolute orders obtained as "business developed," as the basis of the agent's compensation, under the circumstances of that case. We are reviewing a judgment based on a different conclusion as to the intention of the parties under the circumstances of this case which are different from the circumstances in that case. We cannot say that the trial court's conclusion as to the intention of the parties is unreasonable.

In *Suter* v. *Farmers Fertilizer Co.*, 100 Ohio St., 403, 126 N. E., 304, the court construed this language: "brokerage of one per cent. on this sale to be paid by seller to Eugene Suter as payments are received" in the contract of sale that the agent had negotiated. The absolute character of the contract of sale was not in dispute. The court held that the brokerage was earned upon the signing of the contract, that only the payment to the agent was deferred until the principal had received payment, and that as its failure to re-

ceive payment was the result of its own subsequent action, and not because of any provision in the contract negotiated, the plaintiff was entitled to recover.

The characteristics that distinguish the case at bar are the words used and the circumstances under which they were used, particularly the circumstances that to their knowledge at the time, the orders would provide for termination without fault before all or any of the material had been delivered.

As already stated, we believe that the court placed the right interpretation upon the words and actions of the parties. Certainly, we would not be justified in disturbing its finding.

Some question has been raised as to the sufficiency of the finding to support the conclusions of law and the judgment. This is based on the assumption that the court, by referring to the date on the letter, fixed that as the date of the contract. It is true that the letter bearing that date is the memorial of the contract, but the evidence is that it was not accepted and did not become a contract until about two weeks thereafter. While it is the memorial, its meaning could be determined only in the light of all the competent evidence. And the court in its finding clearly stated the meaning of the written contract as to when the commission was earned.

Finding no prejudicial error, the judgment is affirmed.

*Judgment affirmed.*

HILDEBRANT, P. J., MATTHEWS and Ross, JJ., concur in the syllabus, opinion and judgment.